EDUCATION: INDEPENDENT SCHOOL DISTRICT: BOND ELECTION: REVIEW AND COMMENT: School board which receives petition by voters to hold special election to authorize issuance of bonds for school facility must submit project for review and comment. A community recreational facility as described by school district is subject to review and comment procedures. Unless the review and comment is negative, school board must call the special election petitioned by voters. Minn. Stat. §§ 121.148 (1996), 121.15 (Supp. 1997), 205A.05 (Supp. 1997). Affirmative vote in bond election does not compel board to issue bonds. Op. Atty. Gen. 159-a-3, May 25, 1970.

March 11, 1998

John M. Roszak, Esq.
Jay T. Squires, Esq.
Ratwik, Roszak, Maloney, P.A.
300 Peavey Bldg.
730 Second Ave. South
Minneapolis, MN 55402

159-a-3
(Cr. Ref. to 159-b-1, 622-a-1 and 622-b)

Dear Messrs. Roszak and Squires:

In your letter to Attorney General Hubert H. Humphrey III you present substantially the following:

FACTS

In October of 1997, Independent School District No. 197 (West St. Paul-Mendota Heights-Eagan) was presented with a petition signed by voters of the School District. The petition requests the Board of Education to authorize and hold a special election for the school district " in accordance with applicable and current Minnesota State Statutes." The petition goes on to state:

> The Special Election ballot will pose question(s) to District voters
> authorizing the sale of bonds to finance the design, construction
> and equipping of a multi-purpose activity center to be located at
> the Henry Sibley High School campus. The activity center could
> house facilities to serve all District resident and youth programs.

Previously, the School District had created a community task force to study various proposals, including proposals that contemplated the erection of a community activity center in the District. In September of 1996, the School Board determined, based on cost considerations and the availability of existing space, that plans to erect a community facility were not feasible.

As a result of receiving the petition for the special election, the administration of the School District has attempted to determine the cost of architectural and design fees to comply with Minn. Stat. § 121.148 et seq. if the District is required to do so prior to conducting an election pursuant to the petition. Although the matter is not without some uncertainty, the District has been advised that it could cost approximately $20,000 to $25,000 for such fees.

You then ask substantially the following:

## QUESTION ONE

Whether Minn. Stat. § 205A.05, subd. 1 (Supp. 1997) authorizes voters of a school district, by petition, to compel the School District to hold a special election on the question of issuance of bonds for construction of school facilities?

## OPINION

Subject to our response to your third question as discussed below, we answer your first question in the affirmative. In Op. Atty. Gen. 159-a-3, May 25, 1970, construing the provisions of Minn. Stat. § 123.32, subd. 22 (1967), we concluded that a petition of the voters calling for a special election on the question of issuing bonds to finance construction of an outdoor hockey arena required that the school board call an election on the matter. We also concluded, however, that while an affirmative vote in the election authorized the school board to issue the bonds, it did not compel the board to issue the bonds.

Although the special election provisions for school districts are now contained in Minn. Stat. § 205A.05, subd. 1(Supp. 1997) rather than Minn. Stat. § 123.32, subd. 22, we conclude that the answer to your question remains the same under the current statute. In 1987, the Legislature repealed Minn. Stat. § 123.32 (1986) effective July 1, 1988. Minn. Laws 1987, ch. 266, art. 2, §§ 14 and 15. At the same time, it enacted Minn. Stat. § 205A.05 to address the subject of special elections in school districts. Minn. Laws 1987, ch. 266, art. 1, §§ 52 and 69. One obvious difference between the last version of Minn. Stat. § 123.32, subd. 22 (1986) and the special election language of section 205A.05, subdivision 1 as enacted in 1987 is the addition of the first sentence of the latter. It provides:

Special elections must be held for a school district on a question on which the voters are authorized by law to pass judgment.

Under Minnesota law, voters are authorized to "pass judgment" on a variety of issues through the election process. For example, voters are authorized to approve consolidation actions (Minn. Stat. § 122.23, subds. 10-13 (1996)); to increase the size of the school board (Minn. Stat. § 123.33, subd. 1 (1996)); to increase the tax levy of the school district (Minn. Stat. § 124.A.03, subd. 2(a) and (b) (1996)); or to revoke or reduce the amount generated thereby (id. at clause (c)); and to authorize the school board to issue general obligation bonds for school facility construction projects (Minn. Stat. § 475.58, subd. 1 (1996)). Except for the last example, each of these elections mandates that some action be taken following an affirmative vote of a majority of those voting on the question. In either case, however, the voters are "passing judgment" on questions which necessitate voter approval as a prerequisite to action. The last example, an election authorizing a school board to issue general obligation bonds, does not compel the board to issue the bonds. Op. Atty. Gen. 159-a-3, May 25, 1970. Nevertheless, unless an exception to the general rule applies, a school board may not issue general obligation bonds for the school district without an affirmative vote at the election. Consequently, voters at school bond elections are "passing judgment" upon the question of whether their school board should be authorized to issue bonds for the purpose presented at the election. Thus, we conclude that the first sentence of section 205A.05, subdivision 1 does not preclude a special election by petition on the question of authorizing the school board to issue bonds.

Messrs. Roszak and Squires
Page 4

Significantly, the remainder of the special election language of section 205A.05, subdivision 1 (Supp. 1997) is substantially identical to its predecessor. Minn. Stat. § 123.32, subd. 22, (1986). The language of section 123.32, subdivision 22, relied upon in Op. Atty. Gen. 159-a-3, May 25, 1970, remained the same until its repeal in 1987. That language provided in relevant part that:

> The board of an independent district may and upon petition . . . shall by resolution call a special election to vote on any matter requiring approval of the voters of the district.

The new special election provision, enacted as section 205A.05, subdivision 1 provides in relevant part that:

> Upon petition . . . the school board shall by resolution call a special election to vote on any matter requiring approval of the voters of a district.

Consequently, for purposes of responding to your first question, the provisions of the new school district special election statute contain substantially the same terms as its immediate predecessor. Thus, we conclude that your first question is resolved by Op. Atty. Gen. 159-a-3, May 25, 1970.

Based upon the foregoing, it is our opinion that, subject to the qualifications discussed below, Minn. Stat. § 205A.05, subd. 1 (Supp. 1997) authorizes the voters of a school district, by petition, to compel the school district to hold a special election on the question of issuance of bonds for construction of school facilities.[1]

---

[1] It is not the intention of this opinion to review the sufficiency of the petition nor is such a review necessary to respond to the questions presented.

Your letter presenting the District's request for an opinion also expresses a concern about another issue raised by the first question. The concern is that the voters' petition has been presented in a situation where the School Board has recently considered the feasibility of the project which is the subject of the petition and the School Board determined not to pursue the project. Under the facts presented, however, more than a year has passed between the School Board's decision that the project was not feasible and its receipt of the voters' petition. While the facts presented do not indicate whether the School Board ever submitted the question of issuing bonds for the community recreational facility to the voters, Minn. Stat. § 475.58, subd. 1a (1996) allows the question of authorizing bonds to be raised a second time within a period of as little as 180 days from the date an election was held for the same purpose and for the same amount. The fact that the School Board considered the feasibility of the proposed project or a similar one over a year ago does not now bar a special election by petition from being held.

## QUESTION TWO

If the answer to Question One is in the affirmative. whether the School District must comply with Minn. Stat. § 121.148 et seq.. the review and comment law, prior to the conduct of the election?

## OPINION

We answer to your second question in the affirmative. Minn. Stat. § 121.15, subd. 6 (Supp. 1997) provides in relevant part that:

> A school district . . . must not initiate an installment contract for purchase or a lease agreement. hold a referendum for bonds, nor solicit bids for new construction. expansion. or remodeling of an educational facility that requires an expenditure in access of $400.000 per school site prior to review and comment by the commissioner.

(Emphasis added.) The special election under section 205A.05, subdivision 1, discussed in response to your first question, is certainly a "referendum for bonds" within the meaning of section 121.15, subdivision 6. Neither section 205A.05 nor the review and comment provisions of section 121.15 contain any express exemption allowing a referendum for bonds to be held pursuant to a petition for a special election without a review and comment. Consistent with the goal of statutory construction, we believe that section 205A.05, subdivision 1 and section 121.15, as relevant to the subject of your questions, may be construed so that effect may be given to both. Minn. Stat. § 645.26, subd. 1 (1996).

One purpose of the special election by voter petition set out in section 205A.05, subdivision 1 is to allow questions to be put before the voters of the district where the school board may have chosen not to do so. An affirmative vote at the special election, particularly where a significant number of voters participate and support the ballot question, may be persuasive and convince the school board to change its position and pursue the project which is the subject of the ballot. The purposes of the review and comment provisions of Minn. Stat. § 121.148 (1996) and Minn. Stat. § 121.15 (Supp. 1997) are compatible with the special election by petition purposes of the section 205A.05, subdivision 1. Prior to holding a referendum for bonds, and to aid the Commissioner of Children, Families, & Learning in conducting a review and comment, a school district is required to provide the Commissioner with a substantial amount of information about a proposed project. Minn. Stat. § 121.15, subd. 7 (Supp. 1997). Such information ranges from the anticipated need for the facility, a reasonably detailed description of the construction project, the estimated annual operating costs, the effects of the

proposed facility on the district's operating budget. the anticipated benefit of the facility to the area. and the level of collaboration at the facility between the district and other governmental and nonprofit entities. Minn. Stat. § 121.15, subd. 7(b), (c), (d), (f), (k), and (l).

Using the information required to be submitted by subdivision 7, and other information as determined by the Commissioner, the Commissioner evaluates the proposed project, addresses its educational and economic advisability, and returns the review and comment to the school district within 60 days. Minn. Stat. § 121.15, subd. 8 (1996). The review and comment may be either positive, unfavorable or negative. Minn. Stat. § 121.148, subd. 1; Minn. Stat. § 121.15, subd. 8 (1996). The results of the review and comment impact a bond election differently. If a project receives either a positive or an unfavorable review and comment, the school board is required to publish the Commissioner's review and comment in the district's legal newspaper before a bond election is held. Minn. Stat. § 121.15, subd. 9 (1996). A positive review and comment provides information to the voters so that they can make an informed decision at the polls. An unfavorable review and comment requires reconsideration of the project by the school board and, if the question is nevertheless submitted to the voters. requires a 60% affirmative vote at the election to authorize the issuance of school bonds. Minn. Stat. § 121.148, subd. 4. A negative review and comment precludes the district from proceeding with construction. Minn. Stat. § 121.148. subd. 3(c) (1996).

In summary. the information provided by the school district to the Commissioner allows the Commissioner to make a decision on the project. If a bond election is to be held. the Commissioner's decision is shared by the school board with its voters prior to the election. The

information gives the voters information from which they can make informed decisions on the project in deciding whether to authorize the school board to issue bonds for the project.

Based on the foregoing, section 205A.05, subdivision 1 allows voters to petition to bring certain matters to an election by all of the voters of the district where the school board may have otherwise declined to act on the matter. Sections 121.148 and 121.15 provide a procedure through which voters will receive information from which they can make an informed decision at the polls. It is, therefore, our opinion that the school district must comply with Minn. Stat. § 121.148 and Minn. Stat. § 121.15, the review and comment law, prior to conducting a bond election initiated by a petition of the voters pursuant to section 205A.05, subdivision 1.

## QUESTION THREE

If the answer to Question No. 2 is in the affirmative, whether a bond election pursuant to a petition must be held if the review and comment process results in a negative review and comment to the School District?

## OPINION

Based upon the assumption that the Commissioner's negative review and comment follows the procedure set out in Section 121.148, subd. 3, we answer your question in the negative. Minn. Stat. § 121.148, subd. 3(c) provides that:

> A school board **may not proceed with construction** if the state board of education upholds the commissioner's negative review and comment or the commissioner's negative review and comment is not appealed.

(Emphasis added.) To give effect to the impact of a negative review and comment, we believe the phrase "proceed with construction" in clause (c) includes those items identified in section 121.15, subd. 6 (Supp. 1997) as part of an entire project leading up to the construction, expansion

or remodeling of a school building. Thus, a school district which receives a negative review and comment "must not initiate an installment contract for purchase or a lease agreement. hold a referendum for bonds, nor solicit bids for new construction, expansion, or remodeling or an education facility . . . ." Minn. Stat. § 121.15, subd. 6. We reach this conclusion since each of these activities involves an expenditure of funds and some involve long term commitments by a school district where the school district has been precluded by a negative review and comment from proceeding with construction.

We realize that the conclusion that a negative review and comment precludes a bond election by voter petition is at odds with one of the conclusions in Op. Atty. Gen. 159-a-3, May 25, 1970. In that opinion, we concluded that a petition by voters for a special election on authorizing the sale of bonds required the school district to hold such an election. However, the statutory provisions precluding a school district from proceeding with construction based on a negative review and comment were not enacted until 1990. Minn. Laws 1990, ch. 562, art. 5. § 1, subd. 3.

By contrast. the statutory provisions providing for a special election by petition of the voters significantly predate 1990. The provisions of section 205A. 05, subdivision 1. providing for a special election by petition of the voters. as enacted in 1987. are substantially identical to those contained in its longstanding predecessor. Minn. Stat. § 123.32. subd. 22 (1986). which was repealed in the same 1987 law. Minn. Laws 1987. ch. 266. art. 1. § 52 and art. 2. § 14. Minn. Stat. § 645.37 (1996) provides in relevant part that:

> When a law is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing law. the earlier law shall be construed as continued in active operation.

Thus, after receipt of a petition, Minn. Stat. § 205A.05, subd. 1, containing substantially the same language construed in Op. Atty. Gen. 159-a-3, May 25, 1970, generally requires a school district to hold an election on the question of authorizing the school board to issue bonds for construction. On the other hand, a negative review and comment issued pursuant to sections 121.148 and 121.15 precludes the holding of such an election. This conflict is resolved by Minn. Stat. § 645.26, subd. 4 (1996) with the result that the law specifying the impact of a negative review and comment, as the law latest in date of final enactment, prevails. This interpretation also avoids the unreasonable result of holding an election to authorize the issuance of bonds for a project which has been precluded by a negative review and comment. Minn. Stat. § 645.17 (1996).

Based upon the foregoing, it is our opinion that no school bond election may be held if a negative review and comment is issued regardless of whether the election is proposed by the school board or pursued by the voters through a petition.

## QUESTION FOUR

Whether the review and comment procedures apply to the construction of a multi-purpose community recreational facility?

## OPINION

We answer your question in the affirmative. As indicated in your letter, the contemplated multi-purpose community recreational facility may consist of an ice arena, soccer field, swimming pool, and senior center. The facility would be constructed on school property and other governmental and private organizations may be involved in the project. It is estimated that

if constructed, the School District would utilize the facility in its education program on a 50% time basis while other community activities would utilize the facility the other 50% of the time. You have noted that Minn. Stat. § 121.15, subd. 6 (Supp. 1997) uses the term "educational facility" while Section 121.148 (1996) uses the term "school facility." See Minn. Stat. § 121.148, subds. 1 and 3 (1996).

In the context of a multi-purpose community recreational facility intended to be used as described in your letter, we do not find the difference in the terms "educational facility" and "school facility" to be significant. The multi-purpose community recreational facility described in your letter can be appropriately described as either a "school facility" or an "educational facility." In determining whether the Legislature intended that a multi-purpose community recreational facility as described is subject to the review and comment provisions, it is appropriate to look at other laws on the same or a similar subject. Minn. Stat. § 645.16 (5) (1996). Since the School District would be proceeding with an election to authorize the sale of bonds for the construction of such a facility, it is appropriate to look to the purposes for which a school district may issue its general obligation bonds. Minn. Stat. § 475.52, subd. 5 (1996) provides that:

> For capital improvements any school district may issue bonds for the acquisition or betterment of school facilities, including gymnasiums, athletic fields, stadia, teacherages, school garages, school buses, and all other facilities for administration, academic instruction, and physical and vocational education.

(Emphasis added.) The inclusion of the ice arena, soccer field, and swimming pool in the proposal are certainly facilities of the types identified in the emphasized language of subdivision 5.

All of the examples identified in subdivision 5, including the athletic buildings, fall under the general term, "school facilities."

Since the School District may pursue the community recreational facility with others, including other governmental units, it is also appropriate to examine Minn. Stat. § 471.19 (1996). That provision provides that:

> The facilities of any school district, operating a recreational program pursuant to the provisions of Sections 471.15 to 471.19 shall be used primarily for the purpose of conducting the regular school curriculum and related activities and the use of school facilities for recreational purposes authorized by those sections shall be secondary.

(Emphasis added.) The proposal described in your letter seems to be intended to comply with the use requirements of section 471.19. The language of that section requires that such facilities must be used primarily for conducting "the regular school curriculum and related activities," i.e., "educational" purposes and also recognizes that such "school facilities" can be used for recreational purposes.

Finally, and significantly, while section 121.15, subd. 6, requiring a review and comment prior to a bond election, uses the term "educational facility," the provisions of section 121.148, detailing the review and comment process, use the term "school facility." See Minn. Stat. § 121.148, subds. 1 and 3. Thus, there does not appear to be an intended difference in the use of the two terms.

In light of the foregoing, we conclude that the Legislature's use of the term "educational facility" in section 121.15, subd. 6 while using the term "school facility" or "school facilities" in related statutes is not legally significant. It is, therefore, our opinion that a proposed construction

multi-purpose community recreational facility by the School District is subject to the review and

comment provisions of sections 121.148 and 121.15.

Very truly yours.

HUBERT H. HUMPHREY III
Attorney General

CHARLES T. MOTTL
Assistant Attorney General